FREDERICK F. LOVEJOY *v.* WATER RESOURCES COMMISSION ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 7—decided June 29, 1973

*Louis Ciccarello,* for the appellant (plaintiff).

*Brian E. O'Neill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (named defendant).

*Thomas C. Gerety,* for the appellees (defendant Willem vanEmmenes et al.).

BOGDANSKI, J. In this action, the plaintiff, Frederick F. Lovejoy, appealed to the Superior Court[1] from the action of the defendant water resources commission, hereinafter called the commission,[2] in

---

[1] This action was instituted prior to January 1, 1972, the effective date of the Uniform Administrative Procedure Act, General Statutes §§ 4-166—4-185.

[2] The water resources commission has since been abolished and its functions taken over by the department of environmental protection. Public Acts 1971, No. 872.

granting to Willem and Wilhelmina vanEmmenes, hereinafter called the defendants, a permit for the construction of a float and pile pier formation attached to an existing pile and timber pier located in Sheffield Harbor at Wilson Point, in the city of Norwalk, Connecticut. In addition to the record before the commission, the trial court took evidence with respect to the plaintiff's claims. It found the issues for the defendants and the commission, and dismissed the appeal. From the judgment rendered thereon, the plaintiff has appealed to this court.

In this appeal the plaintiff has briefed and pressed two main issues: (1) whether the conclusion of the trial court that the commission acted properly in granting the permit is reasonably supported by the evidence, and (2) whether the commission may legally issue a permit approving a pier addition already completed.

The record, with corrections to which the plaintiff is entitled,[3] discloses the following facts: The defendants own land abutting Sheffield Harbor at Wilson Point in the city of Norwalk. The plaintiff is the franchise owner of oyster lot 201 in Sheffield Harbor covering approximately thirty acres, lying easterly of the upland owned by the defendants.

---

[3] The plaintiff has assigned error in the court's refusal to find two paragraphs of the draft finding which, he claims, were either admitted or undisputed. Since the defendant commission's answer admits the truth of the first paragraph and since the letter from the planning commission for the city of Norwalk is undisputed, the plaintiff's claim has merit and the two paragraphs are ordered to be made a part of the finding. *Brauer* v. *Freccia*, 159 Conn. 289, 290, 268 A.2d 645. The plaintiff has also assigned as error certain rulings on evidence. Since they have not been briefed or argued they are deemed to be abandoned. *Gentile* v. *Ives*, 159 Conn. 443, 444, 270 A.2d 680. The remaining assignments of error challenge the trial court's conclusions and its rulings on the plaintiff's claims of law.

Prior to 1969 a pier and float complex projected from the defendants' land under a permit granted by the commission. This structure extended into the plaintiff's oyster bed. Safety considerations require oyster boats which work oyster lot 201 to maintain a thirty-foot distance from any obstruction. As a consequence, the original pier and float made three to five acres of the plaintiff's oyster bed unworkable. In 1969, the defendants constructed a new addition to their pier before obtaining a permit from the commission, extending the structure over fifteen feet further into the plaintiff's oyster lot and widening the pier complex by twenty-eight feet. The new structure extends 131 feet into the plaintiff's oyster bed and renders about ten acres unworkable by oyster boats. The value of oyster lot 201 is estimated to be over $150,000.

On March 18, 1970, the defendants filed with the commission an application for a permit for the already constructed addition. The application was opposed by the plaintiff on the grounds that the addition was erected without a permit and should be removed, that it rendered oyster lot 201 unusable, that it hindered navigation, and that it was not needed since the defendants already had access to deep water.

On April 3, 1970, the commission caused to be issued a public notice of the application. The state shellfish commission, the state board of fisheries and game, and the state transportation commission notified the commission that they had no objection to the application. The Norwalk building inspector and zoning officer also reported no objection. The Norwalk planning commission did object on the ground

that the addition had been erected without a permit. After an investigation, the commission's field inspector recommended approval.

On May 19, 1970, the commission issued a permit for the pier and float extension. The permit stated, inter alia, that the commission had considered the application with due regard for the matters enumerated in § 25-7b of the General Statutes and that it was of the opinion that the addition did not violate any of its provisions. The permit also provided that it "conveys no property rights in real estate or material nor any exclusive privileges, and is further subject to any and all public and private rights and to any federal, state or local laws or regulations pertinent to the property or activity affected hereby."

From this action, the plaintiff appealed to the Superior Court, which took evidence on the effect the addition would have on his oyster bed and on the reasonableness of the extension plan. The court found the plaintiff to be aggrieved, but sustained the action of the commission and dismissed the appeal.

The record of the commission did not disclose the grounds for its decision. Under these circumstances, any person aggrieved is entitled to offer evidence before the court as to the facts, and the court will act on the assumption that the facts found were the basis on which the commission reached its decision. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 57, 282 A.2d 890; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 354, 64 A.2d 330. The conclusion of the trial court that the commission acted properly must be sustained unless the commission's decision is arbitrary, illegal or not reasonably supported by the evidence. *Con-*

*necticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 328, 269 A.2d 276; *Thompson* v. *Water Resources Commission,* 159 Conn. 82, 87, 267 A.2d 434. The plaintiff has the burden of proof in challenging the administrative action. *Anthony Augliera, Inc.* v. *Loughlin,* 149 Conn. 478, 482, 181 A.2d 596.

The action of the commission is governed by the standards set forth in § 25-7b of the General Statutes.[4] Supporting the decision of the commission was the evidence offered by the defendants, the letters from the shellfish commission, the transportation commission, the board of fisheries and game, the Norwalk building inspector and zoning officer, and the field report of the commission's investigator. The plaintiff contends, however, that the commission did not show "proper regard for the rights and interests of all persons concerned," as required by the statute, because the approved extension was found to diminish the value of his oyster bed franchise.

The plaintiff recognizes that the right of a riparian owner to wharf out to deep water is superior to the rights of the owner of an oyster bed franchise; *Prior* v. *Swartz,* 62 Conn. 132, 25 A. 398; but he argues that the right to wharf out must be exercised in a reasonable manner, so as not to impair unneces-

[4] "[General Statutes] Sec. 25-7b. . . . The water resources commission shall regulate the erection of structures, and work incidental thereto, in the tidal, coastal or navigable waters of the state with due regard for the prevention or alleviation of shore erosion, the use and development of adjoining uplands, the improvement of coastal and inland navigation for all vessels, including small craft for recreational purposes, the use and development of adjacent lands and properties and the interests of the state, including pollution control and recreational use of public waters, with proper regard for the rights and interests of all persons concerned."

sarily the rights of other littoral owners. He contends further that the extension of the pier was not necessary to reach deep water, or in the alternative, that the pier could have been constructed in a different manner or direction so as to avoid injury to the plaintiff's oyster lot.

The trial court, however, did not find these facts to have been proven. Moreover, it is clear from the express limitations of the permit that the plaintiff's rights, such as they are, remain unaffected by it. If the plaintiff's rights have been infringed by the defendants, they can be protected in an appropriate proceeding. *Bloom* v. *Water Resources Commission,* 157 Conn. 528, 537, 254 A.2d 884. We conclude that the plaintiff has failed to sustain his burden of establishing that the decision of the commission was arbitrary, illegal or not reasonably supported by the evidence.

The plaintiff's final claim questions the right of the commission to issue a permit for an addition after it had already been constructed without a permit, as required by § 25-7d of the General Statutes. The answer to this claim is that the commission is not precluded from granting an otherwise proper application because of some prior unlicensed activity by the applicant. Whether an application should be granted under such circumstances is essentially a policy question for the commission to decide.

There is no error.

In this opinion the other judges concurred.